Mark Francis QUIGLEY, Plaintiff,

v.

Edward J. BRENNER, Commissioner of Patents, Defendant.

Civ. A. No. 685–64.

United States District Court
District of Columbia.

June 28, 1965.

Harrison E. McCandlish, J. Matthews Neale, Strauch, Nolan Neale, Nies & Bronaugh, Washington, D. C., for plaintiff.

Clarence W. Moore, Sol., Washington, D. C., for defendant.

JACKSON, District Judge.

This case came on for hearing February 24, 1965. Upon consideration of the evidence presented, together with the briefs of the parties, the Court has found in favor of the defendant, and against the plaintiff, and will dismiss the Complaint.

In conformance to Rule 52(a), Federal Rules of Civil Procedure, the Court states its Findings of Fact and Conclusions of Law separately as follows:

## FINDINGS OF FACT

1. This is an action under 35 U.S.C. § 145 in which plaintiff seeks an order of the Court authorizing defendant to issue a patent to him containing claim 12 of his application for patent Serial No. 62,298, filed October 12, 1960, entitled "Electrical Connector." Four other claims stand allowed by the Examiner in said application.

2. The claimed connector amounts to a ready-to-solder wire formed into a close-coiled helix, the ready-to-solder wire consisting of an "electrical conducting wire" core, an intermediate layer of fluxing material, and an outer layer of solder. Claim 12 reads as follows:

12. As an article of manufacture, a flexible sleeve-like connector assembly for joining opposing related free ends of a pair of oppositely directed electrical leads, said connector assembly consisting of an electrical conducting wire and heat-responsive fluxed bonding material for effecting a mechanically bonded electrical connection between said connector assembly and said respective electrical leads, said electrical conducting wire and said fluxed bonding material being close helically coiled to form a flexible tube open at its ends and having an internal diameter adapted to grippingly encompass the respective free ends of said electrical leads to supportingly maintain said connector assembly and said electrical leads in position before and during application of heat thereto, said fluxed bonding material comprising a coating of fluxing material applied directly to said electrical conducting wire and with an outer coating of solder thereupon, whereby upon encircling association of said connector assembly with the respective free ends of said electrical leads and the application of heat thereto the fluxed bonding material will melt and flow to effect a mechanical bond and an electrical connection between said conducting wire and said respective electrical leads.

3. The prior art relied upon by the Examiner and Board of Appeals consisted of three prior United States patents:

| | | |
|---|---|---|
| Waring | 294,549 | Mar. 4, 1884 |
| Tompkins | 1,980,890 | Nov. 13, 1934 |
| Siegrist et al. | 2,664,844 | Jan. 5, 1954 |

At trial, defendant introduced an additional United States patent:

| | | |
|---|---|---|
| Tomoda | 2,945,464 | July 19, 1960 |
| (Filed Jan. 22, 1954) | | |

---

4. The Waring patent shows an electrical connector in the form of a helically coiled wire. There is no disclosure that the wire is coated with flux and solder. The latter are presumably applied separately of the connector, in a conventional manner.

5. The Tompkins patent discloses several ready-to-solder wires, one of which consists of a copper wire core, an intermediate layer of flux thereon, and an outer layer of solder enveloping the first two. The saving of one hand in making a soldered terminal connection with such a wire is indicated, inasmuch as it is unnecessary to separately apply flux and solder.

6. The Siegrist et al. patent discloses various electrical connectors comprising an inner copper plate and an outer layer of solder thereon. The laminate may be perforate, with the holes filled beforehand with a flux or solvent. Preapplication of solder insures that the "exact quantity of solder needed is present". Also "it is necessary only to heat the soldering de-

vice after having set it in place, in order to effect completely satisfactory soldering in a very short time without having to add either solder or flux".

7. The Tomoda patent discloses a composite ready-to-solder strip which is wrapped helically about wire ends to be joined. The strip may consist of a copper backing channel, a core of solder therewithin, and a bead of flux embedded in the exposed face of the solder core. Tomoda states that "no particular care or skill is required in the actual soldering operation since it is merely necessary to heat the wrapped connection in any suitable manner so that a great deal of time is saved".

8. The Examiner and Board of Appeals held that the connector defined by claim 12 would be obvious to one of ordinary skill in the art having Waring, Tompkins and Siegrist et al. before him. The Court concurs. The advantages disclosed by Siegrist et al. in preapplying solder and flux to a copper connector would reasonably suggest to one skilled in the art that like advantages might be sought for the flexible helical connector form of Waring. Tompkins poses a ready and obvious solution, since Waring's connector need only be made out of Tompkins' ready-to-solder wire in order to achieve Siegrist's advantages.

9. The Court also considers the connector defined in claim 12 obvious to one of ordinary skill in the art having Tompkins, Tomoda and Waring before him. Tomoda is deemed suggestive of making a wrapped helical joint out of Tompkins' ready-to-solder wire, having the same basic composition as Tomoda's strip disclosed for that purpose. While claim 12 does not clearly recite a preformed connector, as distinguished from Tomoda's helical connector wrapped *in situ* about the wire ends to be joined, Waring's coupler is deemed fairly suggestive of preforming a helical connector, into which the wire ends must be inserted. Where there would be insufficient space for wrapping a wire or strip about the wire ends to be joined, as is the case in Waring's disclosed setting, preformation of the helical connector would be the natural and obvious preference.

10. The connector of claim 12, or "Quig" as plaintiff calls it, has not been marketed by itself. However, Quigs have been distributed for several months as a free bonus within packages of condensers sold by Sprague Products Company, plaintiff's present or prospective exclusive licensee. While such promotional distribution might stimulate a true market for Quigs in time, none appears from the evidence here. In any event, the Court harbors no doubt concerning the aforesaid obviousness of the claim 12 Quig in view of the prior art, such that a showing of commercial success therefor would have any bearing on patentability.

## CONCLUSIONS OF LAW

1. Claim 12 is unpatentable under 35 U.S.C. § 103.

2. Plaintiff is not entitled to a patent containing claim 12.

3. The Complaint should therefore be dismissed.